NICHOLS v HOWMET CORPORATION (ON REMAND)

Docket No. 303783. Submitted May 15, 2014, at Lansing. Decided July 24, 2014, at 9:05 a.m. Leave to appeal sought.

Edwin A. Nichols injured his cervical spine in 1989 and reinjured it in 1993 while working for Howmet Corporation. Pacific Employers Insurance Company/CIGNA was Howmet's workers' compensation insurer at those times. In 1998, a magistrate found that the 1993 injury partially disabled Nichols and that he could return to light-duty work. The magistrate determined that Nichols's average weekly wage on January 28, 1993, was $635. Nichols returned to work at a lower wage than he earned before the 1993 cervical-spine injury. In 1998, Nichols injured his low back while engaged in light-duty work. At that time, Howmet was known as Cordant Technologies and American Manufacturers Mutual Insurance was Cordant's workers' compensation insurer. Following the low-back injury, a magistrate awarded Nichols an open award of wage-loss benefits. The magistrate found that Nichols's average weekly wage at the time of his 1998 low-back injury was $567.70. The Workers' Compensation Appellate Commission ordered that American must pay benefits related to the low-back injury and Pacific must pay benefits related to the cervical-spine injury, including wage-loss benefits. Howmet and Pacific appealed and Nichols cross-appealed. Pacific contended that, if it is liable for wage-loss benefits, it is only obligated to pay the difference above the wage loss attributable to the 1998 low-back injury. The Court of Appeals affirmed, concluding that it could not reach the issue because Pacific did not raise the issue before the commission and the commission did not address it. *Nichols v Howmet Corp*, 302 Mich App 656 (2013). The Michigan Supreme Court, in lieu of granting leave to appeal, determined that Pacific did raise the issue before the commission and that the commission had implicitly rejected Pacific's argument. The Supreme Court vacated that portion of the Court of Appeals' opinion and remanded the matter to the Court of Appeals, ordering the Court to address whether Pacific is only obligated to pay differential wage-loss benefits beyond those that American must pay for the wage loss attributable to the 1998 low-back

injury. *Nichols v Howmet Corp*, 495 Mich 988 (2014). The Michigan Property & Casualty Association was substituted for American on appeal. For the sake of clarity, the Court of Appeals continued to refer to the defendant insurance carriers as Pacific and American in its opinions.

On remand, the Court of Appeals *held*:

1. The Court of Appeals may order the allocation of liability or reimbursement if either is warranted in this case. Although the Legislature has provided rules for allocating liability for wage-loss benefits, this case involves none of the specific circumstances addressed by the rules.

2. MCL 418.301(5)(e), as constituted at the time applicable to this case, provides that a disabled employee who works less than 100 weeks and loses his or her job for whatever reason shall receive compensation based on his or her wage at the original date of injury.

3. Pacific is only liable for the wage-loss benefits above those that American should pay for the 1998 low-back injury.

4. The commission erred when it declined to hold American liable for wage-loss benefits related to the 1998 low-back injury. The commission correctly determined that Pacific was liable to pay benefits based on Nichols's wages at the time of the original injury. The commission should have considered general principles of workers' compensation law to determine whether allocation was appropriate.

5. To hold the first insurer liable for the employee's entire amount of wage-loss benefits under MCL 418.301(5)(e), as constituted at the time applicable to this case, when a second disabling injury causes the employee to lose his or her job defies principles of causation in workers' compensation law for two reasons. First, an employee's entitlement to wage-loss benefits from an employer is based on the employee's reduction in wage-earning capacity. Nichols's 1993 cervical-spine injury did not cause the vast majority of his wage loss. His 1998 low-back injury caused much of his wage loss. Second, an employee's postinjury earnings or ability to earn operates as a credit and mitigates the employer's liability to pay wage-loss benefits. Nichols's earnings after his 1993 cervical-spine injury mitigated Pacific's liability to pay wage-loss benefits. Nichols's 1998 low-back injury caused his involuntary removal from the workforce and ended the mitigation of Pacific's liability to pay wage-loss benefits. American was the workers' compensation insurer for any injury at that time. It is logical that American

should reimburse Pacific when Nichols's 1998 low-back injury ended the mitigation of Pacific's liability to pay wage-loss benefits.

6. Under the circumstances of this case, American is responsible for Nichols's wage loss attributable to his 1998 low-back injury and second disability and Pacific remains liable for wage-loss benefits from the partial disability caused by the 1993 cervical-spine injury. The order of the commission allocating liability solely to Pacific is vacated and the matter is remanded to the commission for the allocation of liability in accordance with this opinion.

Vacated and remanded.

*McCroskey Law* (by *Michael J. Flynn*) and *John A. Braden* for Edwin A. Nichols.

*Smith Haughey Rice & Roegge* (by *Jon D. Vander Ploeg*, *Calvin J. Sterk*, and *Thomas R. Tasker*) for Howmet Corporation and Pacific Employers Insurance Company/CIGNA.

*Conklin Benham, PC* (by *Martin L. Critchell*), for Cordant Technologies and the Michigan Property & Casualty Association (substituted for American Manufacturers Mutual Insurance).

ON REMAND

Before: SERVITTO, P.J., and WHITBECK and OWENS, JJ.

PER CURIAM. This case, which involves a dispute between two insurance carriers of a single employer, Howmet Corporation, returns to this Court on remand from the Michigan Supreme Court. The Michigan Supreme Court has directed this Court to address whether liability for Edwin A. Nichols's wage-loss benefits should be allocated between defendant Pacific Employers Insurance Company/CIGNA (Pacific) and defendant American Manufacturers Mutual Insurance (American). The Michi-

gan Property & Casualty Association was substituted for
American on appeal,[1] but for the sake of clarity, we will
continue to refer to the carriers as Pacific and American.
We conclude that, when a first injury partially disables an
employee, that employee resumes working, but then suf-
fers a second disabling injury, the first insurance carrier is
not liable for wage-loss benefits attributable to the second
disabling injury. Therefore, we vacate the Workers' Com-
pensation Appellate Commission's allocation of liability
for wage-loss benefits solely to Pacific and remand to the
commission for allocation of liability in accordance with
this opinion.

## I. FACTS

### A. BACKGROUND FACTS

This Court's previous opinion fully states the facts of
this case.[2] To briefly summarize, Nichols injured his
cervical spine in 1989 and reinjured it in 1993. At those
times, Pacific was Howmet's workers' compensation in-
surer. In 1998, a magistrate found that Nichols's 1993
cervical-spine injury partially disabled him and that he
could return to light-duty work. The magistrate found
that Nichols's average weekly wage was $635 on Janu-
ary 28, 1993.

Nichols returned to work at a lower wage than he had
earned before his 1993 cervical-spine injury. In Decem-
ber 1998, while engaged in light-duty work, Nichols
injured his low back. At that time, Howmet was known
as Cordant Technologies. American was Howmet's
workers' compensation insurer. After Nichols's 1998
low-back injury, a magistrate awarded Nichols an open

---

[1] *Nichols v Howmet Corp*, 495 Mich 988 (2014).

[2] *Nichols v Howmet Corp*, 302 Mich App 656; 840 NW2d 388 (2013),
vacated in part 495 Mich 988 (2014).

award of wage-loss benefits. The magistrate found that Nichols's average weekly wage at the time of his 1998 low-back injury was $567.70. The commission ordered that "[American] must pay benefits related to plaintiff's low back injury. [Pacific] must pay benefits related to plaintiff's cervical injury including wage loss benefits."

### B. PROCEDURAL HISTORY

On appeal, Pacific contended that, if it is liable for wage-loss benefits, it is only obligated to pay the difference above the wage loss attributable to Nichols's 1998 low-back injury. This Court concluded that we could not reach the issue because Pacific did not raise the issue before the commission and the commission did not address it.[3] The Michigan Supreme Court determined, however, that Pacific did raise the issue before the commission and that the commission implicitly rejected Pacific's argument.[4] Accordingly, the Michigan Supreme Court vacated that portion of this Court's opinion and remanded to this Court, ordering this Court to address whether Pacific "is only obligated to pay differential wage loss benefits beyond those defendant American . . . must pay for the plaintiff's wage loss due to that later injury."[5]

### II. ALLOCATION OF LIABILITY

#### A. STANDARD OF REVIEW

This Court reviews de novo questions of law related to a final order of the commission.[6]

---

[3] *Nichols*, 302 Mich App at 673.

[4] *Nichols*, 495 Mich at 988.

[5] *Id.*

[6] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000).

### B. THIS COURT'S POWER TO ORDER ALLOCATION OR REIMBURSEMENT

In its supplemental brief, American contends that this Court cannot allocate liability in this instance because specific statutory sections provide for the allocation of wage-loss benefits. We disagree.

Generally, it is true that "[t]hat which is expressed puts an end to or renders ineffective that which is implied."[7] But we conclude that this rule of statutory interpretation does not apply in this case. The Legislature has provided rules for allocating liability for wage-loss benefits.[8] The specific circumstances addressed by the rules are exactly that—*specific*—and this case involves none of those specific circumstances. Rather, this case fits into the more general framework of MCL 418.301(5).[9] In that subsection, the Legislature has set out *when* an employee is entitled to wage-loss benefits but has not set out *who* must pay benefits or *whether* one insurance carrier is entitled to reimbursement from another. The Legislature's decision not to specifically authorize allocation or reimbursement does not prevent this Court from ordering allocation or reimbursement.[10]

---

[7] *Sebewaing Indus, Inc v Village of Sebewaing*, 337 Mich 530, 545; 60 NW2d 444 (1953). See *Johnson v Recca*, 492 Mich 169, 176 n 4; 821 NW2d 520 (2012).

[8] See, e.g., MCL 418.372(1)(b) (allocating liability when an employee has two employers); MCL 418.921 (allocating liability of an employer of an employee with a vocational disability).

[9] MCL 418.301 was amended effective December 19, 2011, and the relevant provisions of Subsection (5) are now contained in Subsection (9) of the statute. References in this opinion to Subsection (5) are to Subsection (5) as constituted at the time applicable to this case.

[10] *Stewart v Saginaw Osteopathic Hosp*, 100 Mich App 502, 510; 298 NW2d 911 (1980) (reimbursement). See *Arnold v Gen Motors Corp*, 456 Mich 682, 691-692; 575 NW2d 540 (1998) (allocation).

Stated another way, MCL 418.301(5)(e) does not prohibit allocation or reimbursement because it does not address the issue. Nor has the Legislature prohibited, by negative implication, allocating liability between insurance carriers when a partially disabled employee suffers another injury while performing reasonable employment. We conclude that we may order allocation or reimbursement, if either is warranted.

American also argues that MCL 418.301(5)(e) provides that the employer is liable for wage loss based on the original date of injury and thus establishes that Pacific cannot allocate that liability. We find this argument unpersuasive because MCL 418.301(5)(e) does not allocate liability among insurance carriers,[11] but instead is simply silent on the issue.

### C. DIFFERENTIAL WAGE-LOSS BENEFITS

#### 1. LEGAL STANDARDS

An employee is disabled when the employee experiences a disability covered under the workers' compensation act that results in a reduction in wage-earning capacity.[12] But an employee who is only partially disabled retains a partial capacity for work.[13] The employer is not liable for the employee's partial capacity, and his or her "[p]ost-injury earnings, during periods of partial disability, operate as a credit, and in mitigation of, an employer's wage indemnity liability."[14] The Legislature has partially

---

[11] *Nichols*, 495 Mich at 988.

[12] *Sington v Chrysler Corp*, 467 Mich 144, 155; 648 NW2d 624 (2002).

[13] See MCL 418.361 as constituted at the time applicable to this case; *Sweatt v Dep't of Corrections*, 468 Mich 172, 181; 661 NW2d 201 (2003).

[14] *Schmaltz v Troy Metal Concepts, Inc*, 469 Mich 467, 473; 673 NW2d 95 (2003) (quotation marks and citation omitted).

codified the favored-work doctrine in the act's reasonable employment provision.[15] Reasonable employment is

> work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence.[16]

MCL 418.301(5)(e) provides that a disabled employee who works less than 100 weeks and loses his or her job "for whatever reason . . . shall receive compensation based upon his or her wage at the original date of injury."[17] In *Arnold*, the Michigan Supreme Court held that under such circumstances, "the original employer is to pay benefits computed using wages at the time of the original injury."[18] But the Court declined to address whether the original employer might be entitled to reimbursement when the employee loses his or her job because he or she is disabled while performing reasonable employment.[19]

### 2. APPLYING THE STANDARDS

Pacific contends that it should only be liable for the wage-loss benefits above those that American should pay for Nichols's 1998 low-back injury. We agree.

Here, Pacific paid wage-loss benefits for Nichols's 1993 cervical-spine injury. That injury partially disabled Nichols, but he remained capable of earning an average weekly wage of $567.70. In December 1998,

---

[15] *Derr v Murphy Motor Freight Lines*, 452 Mich 375, 383; 550 NW2d 759 (1996).

[16] MCL 418.301(9) as constituted at the time applicable to this case.

[17] MCL 418.301(5)(e).

[18] *Arnold*, 456 Mich at 691.

[19] *Id.* at 692 n 9.

Nichols suffered a second, distinct injury to his low back while performing reasonable employment. He was then fully disabled.

We conclude that the commission erred when it declined to hold American liable for wage-loss benefits related to Nichols's 1998 low-back injury. The commission correctly determined that Pacific, the first insurance carrier, was liable to pay benefits on the basis of Nichols's wages at the time of the original injury.[20] But the commission should not have declined to order reimbursement for Pacific simply because the Michigan Supreme Court did not address the issue in *Arnold*. Accepting as we must the Michigan Supreme Court's determination that Pacific raised this issue before the commission, we conclude that the commission should have considered general principles of workers' compensation law to determine whether allocation was appropriate.

To hold the first insurer liable for the employee's entire amount of wage-loss benefits under MCL 418.301(5)(e) when a second disabling injury causes the employee to lose his or her job defies principles of causation in workers' compensation law for two reasons. First, an employee's entitlement to wage-loss benefits from an employer (or insurance carrier) is based on his or her reduction in wage-earning capacity.[21] Here, Nichols's 1993 cervical-spine injury did not cause the vast majority of Nichols's wage loss. Rather his 1998 low-back injury caused much of that wage loss. Nichols's ability to continue to earn $567.70 a week while performing reasonable employment after his 1993 cervical-spine injury illustrates this point precisely. To reiterate, Nichols's 1998 low-back injury separately caused much of the reduction in his

---

[20] See *Arnold*, 456 Mich at 691.

[21] See *Sington*, 467 Mich at 155; *Sweatt*, 468 Mich at 186.

wage-earning capacity.[22]

Second, an employee's postinjury earnings or ability to earn operates as a credit and mitigates the employer's liability to pay wage-loss benefits.[23] Even after Nichols's 1993 cervical-spine injury, he retained some capacity to work.[24] His earnings mitigated Pacific's liability to pay wage-loss benefits.[25] Nichols's 1998 low-back injury caused his involuntary removal from the workforce and ended the mitigation of Pacific's liability to pay wage-loss benefits. At that time, American was the worker's compensation insurer for any injury. It is logical that American should reimburse Pacific when Nichols's 1998 low-back injury ended the mitigation of Pacific's liability to pay wage-loss benefits.

We conclude that, under the circumstances of this case, American, as the insurer at the time of Nichols's 1998 low-back injury, is responsible for Nichols's wage loss attributable to his 1998 low-back injury and second disability but that Pacific, as the insurer at the time of the commission's partial disability determination, should remain liable for wage-loss benefits from the partial disability caused by Nichols's 1993 cervical-spine injury. Our conclusion is consistent with general disability principles concerning causation and with reasonable employment principles.

### III. CONCLUSION

We conclude that Pacific is only liable for wage loss related to Nichols's 1993 cervical-spine injury and par-

---

[22] *Nichols*, 302 Mich App at 672. See *Sington*, 467 Mich at 155.

[23] *Schmaltz*, 469 Mich at 473; *Perez v Keeler Brass Co*, 461 Mich 602, 611; 608 NW2d 45 (2000); MCL 418.301(5)(a).

[24] See *Sweatt*, 468 Mich at 181.

[25] See *Schmaltz*, 469 Mich at 473.

tial disability, and American is liable for wage loss related to Nichols's 1998 low-back injury. We vacate the commission's allocation of liability solely to Pacific and remand for the commission to allocate liability in accordance with this opinion. We do not retain jurisdiction. No costs under MCR 7.219 because an issue of public interest is involved.

SERVITTO, P.J., and WHITBECK and OWENS, JJ., concurred.