PERRON v BOARD OF EDUCATION OF THE ROYAL OAK
SCHOOL DISTRICT

Docket No. 85859. Submitted July 8, 1986, at Lansing. Decided November 3, 1986. Leave to appeal applied for.

Margaret A. Perron filed a petition in the Ingham Circuit Court for judicial review of a decision by the State Tenure Commission affirming the termination of her employment as a school teacher by the Royal Oak School District Board of Education on the basis of poor job performance. The commission, prior to issuing its final decision, had denied Perron's motion for summary judgment, wherein she contended that the board of education was estopped from dismissing her while she was on a leave of absence to alleviate stress which was impairing her job performance. The commission's denial of Perron's motion was upheld by the Oakland Circuit Court on review. The Ingham Circuit Court, James T. Kallman, J., reversed the commission's final decision. The board of education appealed by leave granted.

The Court of Appeals *held:*

1. The Ingham Circuit Court was not precluded by the law of the case doctrine from ruling that Perron could not be discharged during her leave of absence since the record revealed that the facts submitted to the Ingham Circuit Court were not materially the same as those submitted to the Oakland Circuit Court.

2. In light of the circumstances in this case, including the grant of Perron's leave of absence, representations made to Perron that she would have a longer time period in which to improve her job performance than what she was actually given, and the fact that her job performance was only assessed on one occasion, contrary to representations indicating that it would

REFERENCES

Am Jur 2d, Appeal and Error §§ 744-759.

Am Jur 2d, Schools §§ 185, 187, 188.

Sufficiency of notice of intention to discharge or not to rehire teacher, under statutes requiring such notice. 52 ALR4th 301.

Erroneous decision as law of the case on subsequent appellate review. 87 ALR2d 271.

be assessed at three separate times, the commission's finding that there was just and reasonable cause for Perron's discharge was not supported by competent, material and substantial evidence on the record.

Affirmed.

1. APPEAL — LAW OF THE CASE.

The law of the case doctrine holds that if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.

2. SCHOOLS — DISCHARGE OF TEACHERS — INADEQUATE CLASSROOM PERFORMANCE.

A teacher may not as a general rule be discharged from employment on the basis of inadequate classroom performance unless the teacher is first notified of and given a reasonable opportunity, considering all the circumstances, to correct the deficiency.

*Levin, Levin, Garvett & Dill* (by *Harvey I. Wax* and *Glen M. Bis*), for appellee.

*Thrun, Maatsch & Nordberg, P.C.* (by *Philip J. Goodman*), for appellant.

Before: CYNAR, P.J., and T. M. BURNS and M. E. KOBZA,* JJ.

PER CURIAM. The Board of Education of the Royal Oak School District (hereafter respondent) appeals from an order of the circuit court which reversed the State Tenure Commission's affirmance of the respondent's discharge of Margaret Perron (hereafter petitioner).

Respondent claims that the trial court erred (1) because the court was without power to reverse the State Tenure Commission's determination that petitioner could properly be discharged while on a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

leave of absence, (2) because the court made find-
ings of fact independent of the State Tenure Com-
mission, and (3) because the State Tenure Commis-
sion's decision was authorized by law, and sup-
ported by competent, material and substantial
evidence on the whole record.[1] We are not per-
suaded by respondent's claims of error and we
affirm.

I

The record shows that petitioner had taught
twelve years prior to the 1978-79 school year, the
year the district brought charges that petitioner
was unfit to teach.

At the conclusion of the previous, 1977-78,
school year, petitioner's principal met with peti-
tioner to discuss her performance for that year. On
August 31, 1978, at the commencement of the new
school year, her principal prepared a document
listing five job targets, areas of petitioner's perfor-
mance in which she needed improvement based on
the principal's perception during observation of
petitioner the previous school year. These areas
were (1) classroom atmosphere and control, (2)
varied instructional techniques, (3) reading in-
struction, (4) mathematics instruction, and (5) so-
cial studies and science instruction. The targets
were discussed thoroughly, and petitioner was in-
formed by a memorandum that she would be
evaluated on December 1, February 1, and April
15 of the 1978-79 school year to determine her
progress with regard to the targets. By memoran-
dum placed in petitioner's personnel file the same
date, the principal stated, "it is my expectation
that you will be able to meet the agreed-upon

---

[1] Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d).

targets and that you and your students will have a successful year."

Petitioner's principal and the principal of a third school, Mr. Wiggins, observed petitioner's classroom during November of 1978. Both found problem areas to be classroom atmosphere and control, and lack of efficient instructional techniques. Petitioner's principal concluded that petitioner had improved by January of 1979 only in the area of social studies and science instruction. Otherwise, there was little or no improvement in the other target areas.

In the fall of 1978, petitioner's performance was reviewed by the Teacher Fitness Advisory Committee, a creature of the teachers' association and school district's collective bargaining agreement, composed of representatives of both the association and the district, which gives advice as to teacher performance problems, particularly in the area of health concerns. During her presentation to the committee, petitioner maintained that her teaching difficulties were due to stress. The committee recommended that petitioner take health leave and obtain physical and psychiatric examinations. Petitioner eventually accepted the recommendation and requested leave, which was granted as of January 29, 1979.

On April 9, 1979, petitioner's principal filed tenure charges against petitioner and sought her discharge. Respondent found reasonable and just cause for discharge[2] and dismissed petitioner.

Petitioner appealed to the State Tenure Commission. Initially, petitioner filed a motion for summary judgment alleging that respondent's grant of petitioner's request for leave of absence estopped the district from filing teacher tenure charges

[2] MCL 38.101; MSA 15.2001.

against petitioner. An evidentiary hearing was ordered limited to the issue of whether the granting of petitioner's leave of absence estopped the respondent from discharging petitioner.

Following the hearing, the commission determined that the district had never held out that the leave of absence was disciplinary or was granted in lieu of filing teacher tenure charges against petitioner. Rather, the commission found that any detrimental reliance by petitioner was founded only in the statements of union representatives who advised petitioner to take the leave of absence based upon their subjective belief that her failure to do so would result in the filing of teacher tenure charges. Accordingly, her motion for summary judgment was denied.

Pursuant to MCL 600.631; MSA 27A.631 petitioner appealed that ruling to the Oakland Circuit Court, which affirmed, relying on the same testimony relied upon by the commission. Upon remand, testimony was taken on the issue of whether there was just and reasonable cause for petitioner's discharge. By a four to one vote, the commission affirmed petitioner's discharge.

The State Tenure Commission majority was troubled by petitioner's claim that she was not afforded enough time to improve her performance since she was effectively given only until January 29, 1979, to improve her performance, as opposed to the entire school year as held out in the "job targets" document. However, the commission ultimately concluded:

> The timing of the leave of absence and the bringing of charges is troubling in this case. While the leave was granted at appellant's request, we believe that in future instances the ambiguity created by such a sequence of events should be

avoided. Nevertheless, we must agree with appellee that its actions comported with the minimum requirements of the tenure act and that, therefore, the district cannot be held responsible for the resulting reduction in the improvement time set out in the "job targets". In addition, we note that the job targets were not the first attempt to improve appellant's performance. The process had begun nearly two years prior to the creation of the job targets. For these reasons, we must conclude that appellant was afforded adequate time to improve.

The lone dissenter opined:

The "job targets" established by appellant's building principal set out the time period in which appellant was to achieve the needed improvements. The third and final evaluation of appellant's performance was to occur in April of 1979. . . . This evaluation was never undertaken, however, because appellant began her leave of absence on January 29, 1979. My colleagues dispose of the difficulty posed by the intervention of the leave by relying on the notion that appellee's actions did not contravene the express provisions of the Act. This finding cannot end the inquiry, however. While appellee may have complied with the letter of the law, its actions cannot be said to have left the Act's spirit untrammeled. Thus, the relevant question is: Was appellee's course of conduct toward appellant just or reasonable in light of all the surrounding circumstances? Based on my review of the record, I find that the answer to this question must be "No".

First appellee's agents initially represented to appellant that she would have until April to improve her performance . . . . When appellant "requested" the leave in January, she was implicitly complying with the Teacher's Fitness Advisory Committee's and the district's wishes. Clearly, if appellee had not wanted appellant to take the leave, it would not have been granted. Appellee

was, therefore, an active participant in the events which removed any possibility that appellant would be allowed all the improvement time specified in the "job targets" during the 1978-79 school year.

\* \* \*

While on leave, appellant was expected to, and did, seek a solution to the psychological problems which she felt were impairing her performance. Appellee did not permit her to complete this second means of remediation either before discharge proceedings were commenced. In view of the fact that appellant had nine years of successful teaching prior to the instant difficulties, at least one of these means of improvement should have been pursued to completion. Thus, I find that, at a minimum, appellee's conduct obliged it to allow appellant to return following the leave so that the success of the treatment could be evaluated in the classroom setting. I conclude that appellee failed to fulfill its obligation to afford appellant an adequate opportunity to improve her performance. Accordingly, I hold that appellee failed to establish just and reasonable cause for appellant's discharge.

Petitioner appealed to the Ingham Circuit Court. Over respondent's contentions that the court was precluded by the law of the case doctrine from deciding whether the district could have filed tenure charges against petitioner during her leave of absence, the trial court held that once the district held out that petitioner would have the entire year to improve, it could not deny petitioner that improvement by discharging her during a leave of absence granted by the respondent before the period had expired. The trial court stated: "Application of the 'law of the case' doctrine is not appropriate in this case since [Oakland Circuit Court] Judge Kuhn's order, issued as it was *prior*

to the Tenure Commission's Final Order, cannot be considered an appellate decision."

## II

*Did the doctrine of the "law of the case" preclude the Ingham Circuit Court from holding that petitioner could not be discharged during her leave of absence?*

The law of the case doctrine holds that, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. *Cicelski v Sears, Roebuck & Co,* 132 Mich App 298, 305-306; 348 NW2d 685 (1984), lv den 422 Mich 916; 369 NW2d 194 (1985).

A review of the record in the instant case reveals that the facts submitted to the Ingham Circuit Court were not materially the same as those submitted to the Oakland Circuit Court. Specifically, the "job targets" documents were not a part of the record before the commission on petitioner's motion for summary judgment or before the Oakland Circuit Court on review of the denial of petitioner's motion for summary judgment. In fact, by law, the Oakland Circuit Court review was limited to the record developed before the State Tenure Commission on petitioner's motion for summary judgment. MCL 24.306; MSA 3.560(206).

Further, the mere fact that the "job targets" documents and testimony had been admitted into evidence before the board of education, and thus were a part of the record when petitioner's motion for summary judgment was filed, did not preclude

the Ingham Circuit Court from considering that evidence as a basis for petitioner's claim after a remand on the merits from the Oakland Circuit Court.

The rule of the law of the case is distinguishable from the doctrine of res judicata. The former is applicable only when the same point was decided on the previous appeal, while under the doctrine of res judicata all questions which might have been litigated under the issues formed in the case, as well as those actually adjudged, must be taken as at rest forever. 5B CJS, Appeal & Error, § 1822, p 191; see *Topps-Toeller, Inc v City of Lansing*, 47 Mich App 720, 726-729; 209 NW2d 843, lv den 390 Mich 788 (1973).

We can see no valid reason for holding that since petitioner framed the issues for summary judgment, she should be thereafter precluded from asserting different evidentiary support for her claim following trial on the merits.[3] See, e.g., *Borkus v Michigan Nat'l Bank*, 117 Mich App 662; 324 NW2d 123 (1982), lv den 417 Mich 998 (1983) (where an order of summary judgment is reversed and the case returned for trial because an issue of material fact exists, law of the case doctrine does not apply to the second appeal because the first appeal is not decided on the merits).

III

*Did the Ingham Circuit Court judge make independent findings of fact or, alternatively, was the*

---

[3] To the extent the trial court's reasoning with regard to the application of the law of the case doctrine is inconsistent with ours, the inconsistency is not grounds for reversal. Where a trial court reaches the right result, this Court will not disturb the result attained even though other reasons should have been assigned. See *Queen Ins Co v Hammond*, 374 Mich 655, 658-659; 132 NW2d 792 (1965).

*decision of the State Tenure Commission sup-
ported by competent, substantial and material
evidence on the record?*

Respondent contends that the trial court did not
apply the standard of review provided by MCL
24.306; MSA 3.560(206), but instead "found" that
the district had implied that petitioner would not
be discharged during the course of her leave.

The substantial-evidence standard embodied in
MCL 24.306(1)(d); MSA 3.506(206)(1)(d) requires
thorough review of the evidence in an administra-
tive proceeding, not limited to those portions of
the record supporting the findings of an adminis-
trative agency. *Knowles v Civil Service Comm,* 126
Mich App 112; 337 NW2d 247 (1983). As such, we
disagree with the commission's statement that
"[respondent's] actions comported with the mini-
mum requirements of the tenure act and that,
therefore, the district cannot be held responsible
for the resulting reduction in the improvement
time set out in the 'job targets.' " Minimal compli-
ance with the tenure act cannot be sufficient in
the face of a district's representations concerning
what constitutes a reasonable period of improve-
ment.

This Court has stated its agreement with the
"general principle" prohibiting a teacher's dis-
charge unless the teacher is first notified of and
given a reasonable opportunity, considering all the
circumstances, to correct the deficiency. *Bd of Ed
of Benton Harbor Area Schools v Wolff,* 139 Mich
App 148, 155; 361 NW2d 750 (1984), lv den 422
Mich 976 (1985). In all the circumstances here,
including the district's grant of petitioner's leave
of absence, the district's representations that peti-
tioner would have the entire year to improve, and

the fact that petitioner was only observed and evaluated, pursuant to the "job targets," in November of 1978, we conclude that the commission's finding that there was just and reasonable cause for petitioner's discharge is not supported by substantial evidence on the record. Accordingly, we reject respondent's contention that the Ingham Circuit Court made independent findings of fact with regard to the record here.

To the extent respondent contends, and the commission held, that attempts to improve petitioner's performance had begun nearly two years prior to the creation of the job targets, we find the record wholly inadequate to support that contention.

Having found that the circuit court had the power to examine the propriety of petitioner's discharge during her leave of absence and agreeing that the State Tenure Commission's finding that petitioner was discharged for reasonable and just cause was not supported by the record, the order of the circuit court is affirmed.

Affirmed.